## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

**KIMBERLY K. PIERATT,**

        **Plaintiff,**

        **v.**                         **Case No.  04-2358-JWL**

**JO ANNE B. BARNHART,**
**Commissioner of Social Security,**

        **Defendant.**
_____

### MEMORANDUM AND ORDER

Plaintiff Kimberly K. Pieratt brings this action pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3) seeking judicial review of the final decision of defendant Jo Anne B. Barnhart, the Commissioner of Social Security (the Commissioner), denying Ms. Pieratt's applications for disability insurance benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. § 423, and supplemental security income (SSI) under Title XVI of the Social Security Act, 42 U.S.C. § 1381a.  Plaintiff contends that the Commissioner erred by failing to assign adequate weight to the opinions of her treating physicians while relying heavily on the opinion of a non-treating medical expert, by failing to properly evaluate her credibility, by failing to consider the combined effect of her impairments, and by failing to make findings regarding the physical and mental demands of her past relevant work.  For the reasons explained below, the court largely agrees and reverses and remands this case to the Commissioner for further proceedings consistent with this memorandum and order.

## I.      BACKGROUND

Plaintiff filed an application for DIB and SSI on July 3, 2000, claiming that she became disabled beginning January 27, 2000, due to fibromyalgia, chronic fatigue syndrome, lupus, and depression.   Her application was denied initially and upon reconsideration.   At plaintiff's request, administrative law judge (ALJ) Michael Johnson held a hearing and granted plaintiff's claim on the record.   The Social Security Administration subsequently notified plaintiff that it would not be honoring ALJ Johnson's decision and that her case would be assigned to a different ALJ.

ALJ George E. Lowe held another hearing on February 27, 2003.  Plaintiff, her husband, and her attorney were present.   On April 22, 2003, ALJ Lowe rendered a decision denying plaintiff's claim for benefits.   He found that plaintiff had not engaged in substantial gainful activity since the alleged onset of her disability, that she suffered from a severe impairment or combination of impairments, that her medically determinable impairments did not meet or equal any of the criteria in the listing of impairments, and that she has the residual functional capacity (RFC) to perform her past relevant work.   Thus, the ALJ determined that plaintiff was not disabled and denied benefits.

The Appeals Council denied plaintiff's request for review, and therefore ALJ Lowe's decision stands as the Commissioner's final decision.

2

## II.    STANDARD OF REVIEW

On appeal, this court's review of the Commissioner's determination that a claimant is not disabled is limited.  *Hamilton v. Sec'y of HHS*, 961 F.2d 1495, 1497 (10th Cir. 1992). The court examines whether the decision is supported by substantial evidence in the record as a whole and whether the correct legal standards were applied.  *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."   *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003).   "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it."  *Langley*, 373 F.3d at 1118 (quotation omitted); *Hamlin*, 365 F.3d at 1214 (same).   The court neither reweighs the evidence nor substitutes its judgment for that of the Commissioner.  *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214.   Grounds for reversal exist if the agency fails to apply the correct legal standards or fails to demonstrate reliance on the correct legal standards.  *Hamlin*, 365 F.3d at 1114.

"The Commissioner follows a five-step sequential evaluation process to determine whether a claimant is disabled."   *Doyal*, 331 F.3d at 760.  This analysis evaluates whether: (1) the claimant is engaged in substantial gainful activity; (2) the claimant suffers from a severe impairment or combination of impairments; (3) the impairment is equivalent to one of the impairments listed in the appendix of the relevant disability regulation; and (4) the claimant possesses the residual functional capacity to perform his or her past work or (5) other work

in the national economy.  *Allen v. Barnhart*, 357 F.3d 1140, 1142 (10th Cir. 2004); *see* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  The claimant bears the burden of proof through step four and, if the claimant meets this burden, then the burden shifts to the Commissioner at step five.  *Hackett v. Barnhart*, 395 F.3d 1168, 1171 (10th Cir. 2005).

## III.    ANALYSIS

In this case, the ALJ determined plaintiff was not disabled at step four.  Step four consists of three phases.  *Doyal*, 331 F.3d at 760.  First, the ALJ evaluates the claimant's physical and mental RFC.  *Id.*  Second, the ALJ determines the physical and mental demands of the claimant's past relevant work.  *Id.*  "'In the final phase, the ALJ determines whether the claimant has the ability to meet the job demands found in phase two despite the mental and/or physical limitations found in phase one.'"  *Id.* (quoting *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996)).  At each of these phases, the ALJ must make specific findings.  *Winfrey*, 92 F.3d at 1023; *Henrie v. United States Dep't of HHS*, 13 F.3d 359, 361 (10th Cir. 1993).  A claimant bears the burden of proving that his or her medical impairments prevent him or her from performing past relevant work.  *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Williams v. Bowen*, 844 F.2d 748, 751 & n.2 (10th Cir. 1988).  In order to make the ultimate finding that a claimant is not disabled at step four, however, the agency's rulings require the ALJ to make specific and detailed predicate findings concerning the claimant's RFC, the physical and mental demands of the claimant's past jobs, and how these demands mesh with the

claimant's particular exertional and nonexertional limitations.   *Winfrey*, 92 F.3d at 1023-25; Social Security Ruling (SSR) 96-8p, 1996 WL 374184, at *5-*6 (July 2, 1996).

### A.    Phase One: Plaintiff's RFC

Plaintiff contends that the ALJ erred in essentially three principal respects in assessing her RFC: (1) failing to assign adequate weight to the opinions of her treating physicians while assigning too much weight to the opinion of the agency's medical expert; (2) failing to properly assess her credibility; and (3) failing to consider the combined effect of her impairments.

### 1.    *Weight Given to Medical Opinions*

In assessing plaintiff's RFC, the ALJ gave "little weight" to the RFC assessments of plaintiff's treating physicians, Jeffry D. Lawhead, M.D. and Stephen A. Ruhlman, M.D.   The ALJ's reasoning and analysis was based largely on the testimony and opinions of a non-treating medical expert, Lynn I. DeMarco, M.D.   Plaintiff argues that the ALJ erred by failing to assign adequate weight to the opinions of Drs. Lawhead and Ruhlman, especially the opinion of Dr. Ruhlman, while assigning too much weight to Dr. DeMarco's opinion.   As explained below, the court finds that the ALJ failed to apply the correct legal standards in evaluating Drs. Lawhead and Ruhlman's opinions and also that the ALJ's reasoning appears to be unsupported by substantial evidence in the record.   Accordingly, the court will remand this case to the Commissioner for a proper evaluation of the weight to be given to plaintiff's treating physicians' opinions.

5

Dr. Lawhead completed a medical source statement dated April 20, 2000, in which he stated that plaintiff suffers from fibromyalgia and chronic fatigue.  He opined that, because of this, plaintiff could sit for less than one hour, stand and/or walk for two hours, and would need to rest for five hours in an eight-hour workday.  He opined that she could rarely or never lift or carry objects, rotate or flex the neck, or use her hands frequently for reaching, handling or fingering.  He completed less comprehensive attending physician statements on January 9, 2001, August 22, 2001, and February 27, 2002.  In those, he stated that plaintiff could stand and/or walk for less than three hours and sit for less than three hours, and that she is limited in her capabilities to lift and/or carry, push and/or pull, climb, bend, and stoop.  He additionally noted on the August 22, 2001, statement that plaintiff was markedly limited insofar as she could stand and/or walk for only 10-15 minutes.

Dr. Ruhlman completed a medical source statement on January 28, 2003, in which he stated that plaintiff suffers from fibromyalgia, thoracic back pain, fatigue, and cerviobrachial syndrome.  He opined that, because of this, plaintiff could sit for three hours, stand and/or walk for two hours, and would need to rest for three hours in an eight-hour workday.  He opined that she could rarely or occasionally lift and carry objects, stoop, rotate or flex the neck, or use her hands frequently for reaching, handling, or fingering.

The ALJ gave Drs. Lawhead and Ruhlman's opinions little weight because, he reasoned,

they are conclusory and inconsistent with the objective signs and findings of the physical exams of record, the claimant's statements concerning her activities of daily living in the October 9, 2000 consultative psychological exam, results of diagnostic tests, failure of claimant to engage in an exercise program or use narcotic analgesics and the failure of either physician to cite specific signs and

6

findings the [sic] would support their conclusions regarding the limitations [on] claimant's residual functional capacity described above.

Contrary to Drs. Lawhead and Ruhlman's opinions, the ALJ determined that plaintiff has the following RFC with respect to her physical impairments:

> no limitation in the ability to grip or grasp; could sit two hours at a time and seven hours total in eight; stand two or three hours at a time and six or seven hours total in eight; walk three or four blocks at a time; lift and carry an object weighing 20 to 25 pounds fifteen feet with both hands for ten to twelve times an hour; bend occasionally to pick up objects off the floor; climb two or three flights of stairs occasionally; and had no other limitations on her residual functional capacity.

This RFC determination is essentially identical to Dr. DeMarco's evaluation of plaintiff's RFC. The only respect in which the two differ is that Dr. DeMarco opined that plaintiff is not limited in her ability to sit, whereas the ALJ added the limitation on sitting.

In evaluating a treating physician's opinion, the ALJ must first determine whether the opinion is entitled to controlling weight. *Langley*, 373 F.3d at 1119; *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). "The ALJ is required to give controlling weight to the opinion of a treating physician as long as the opinion is supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record." *Hamlin*, 365 F.3d at 1215. Even if the opinion is not entitled to controlling weight, it is still entitled to deference and must be weighed using the following six factors:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency

7

between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Langley*, 373 F.3d at 1119 (quotation omitted); *accord Watkins*, 350 F.3d at 1301; *see also* 20 C.F.R. §§ 404.1527(d), 416.927(d) (listing these factors); SSR 96-2p, 1996 WL 374188, at *4 (July 2, 1996) (treating source opinions that are not entitled to controlling weight are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. §§ 404.1527 and 416.927).   After considering these factors, the ALJ must give good reasons for the weight he ultimately assigns to the opinion.   *Watkins*, 350 F.3d at 1300; *Doyal*, 331 F.3d at 762; SSR 96-2p, at *5.   In the end, the ALJ must give specific, legitimate reasons for disregarding a treating physician's opinion that a claimant is disabled.   *Goatcher v. United States Dep't of HHS*, 52 F.3d 288, 290 (10th Cir. 1995).

In this case, the ALJ failed to give specific, legitimate reasons for giving little weight to Drs. Lawhead and Ruhlman's opinions.   Insofar as the ALJ declined to give those opinions controlling weight, he failed to apply the correct legal standard because, even if those opinions are not entitled to controlling weight, they are still entitled to a degree of deference and must be weighed using the six factors outlined above.   *See, e.g., Langley*, 373 F.3d at   1120-21 (holding the ALJ erred by failing to evaluate what lesser weight a treating physician's opinion should be given).   An examination of these factors would require the ALJ to acknowledge, for example, plaintiff's lengthy treatment history with both physicians, the frequency of her office visits, and the fact that Dr. Ruhlman is a board certified rheumatologist.   *See, e.g.*, 20 C.F.R.

8

§§ 404.1527(d)(5), 416.927(d)(5) (the opinion of a specialist about medical issues related to his or her area of specialty is generally entitled to more weight than the opinion of a source who is not a specialist).   Perhaps most obviously, Drs. Lawhead and Ruhlman's opinions concerning plaintiff's RFC appear to be overwhelmingly consistent with the record as a whole, which establishes that plaintiff suffers from severe and chronic pain and fatigue as a result of her fibromyalgia.

In addition to the ALJ's failure to apply the correct legal standards, it appears that many of his other reasons for discounting these treating physicians' opinions are not legitimate. Although these treating physicians' opinions are conclusory insofar as they are set forth on medical source statement and attending physician statement forms, they are conclusory because those forms do not seek further elaboration.   Both physicians, however, rendered those opinions based on treatment histories that are thoroughly documented and supported by treatment and progress notes.   The medical source statements and attending physician statements simply memorialize the treating physicians' opinions regarding the extent to which plaintiff's impairments limit her ability to function.

Moreover, the ALJ's reliance on the lack of objective signs and findings was erroneous insofar as plaintiff's chief complaint appears to be fibromyalgia and its residual effects. Fibromyalgia is a rheumatic disease that is a chronic condition, causing long-term but variable levels of muscle and joint pain, stiffness, and fatigue.   *Moore v. Barnhart*, No. 03-3253, 2004

WL 2634571, at *8 (10th Cir. Nov. 19, 2004).[1]   It is poorly understood and is diagnosed

entirely based on patients' reports.  *Id.*

> "Its cause or causes are unknown, there is no cure, and, of greatest importance
> to disability law, its symptoms are entirely subjective.  *There are no laboratory
> tests for the presence or severity of fibromyalgia.*  The principal symptoms are
> 'pain all over,' fatigue, disturbed sleep, stiffness, and--the only symptom that
> discriminates between it and other diseases of a rheumatic character--multiple
> tender spots, more precisely 18 fixed locations on the body (and the rule of
> thumb is that the patient must have at least 11 of them to be diagnosed as having
> fibromyalgia) that when pressed firmly cause the patient to flinch."

*Id.* (emphasis in original) (quoting *Sarchet v. Chater*, 78 F.3d 305, 306 (7th Cir. 1996)).

Because there are no laboratory tests for the presence or severity of fibromyalgia, then, the

ALJ was wrong to rely on the lack of such objective evidence to discredit the treating

physicians' opinions regarding the severity of plaintiff's fibromyalgia.  *See, e.g.*, *id.* (holding

the ALJ failed to properly analyze the treating physician's opinion where it appeared that the

ALJ did not properly understand the nature of plaintiff's diagnosed condition of fibromyalgia).

The ALJ also discounted the treating physicians' opinions because they were

inconsistent with plaintiff's statements concerning her activities of daily living in the October

9, 2000, consultative psychological exam with David L. Mouille, M.D.   Notably, though, that

consultative exam was performed for the purpose of evaluating plaintiff's mental impairments,

not her physical impairments.   Furthermore, the ALJ's rationale on this issue misconstrues Dr.

Mouille's opinion.   The ALJ noted that Dr. Mouille noted that plaintiff "was able to bathe

herself, cook, manage her money, do chores, care for a sick child or adult, shop, do lawn work

---

[1] This unpublished case is being cited for its persuasive value on a material issue.

and use public transportation"; the ALJ disregarded the previous notation in Dr. Mouille's report which states that plaintiff "spends her days usually sitting around, *caring for her own pain,* and watching television.   Most of her social life pivots around her family, *her support group,* and her exercise group" (emphasis added).   The ALJ also noted that Dr. Mouille determined that plaintiff's "ability to perform activities of daily living, establish and maintain adequate relationships with coworkers and supervisors, understand and perform simple tasks in an average amount of time, concentrate, persist and maintain pace and maintain an adequate work schedule with average performance demands were reduced but not impaired." Significantly, however, Dr. Mouille rendered this opinion regarding plaintiff's mental limitations, i.e., that plaintiff's capabilities in these respects were reduced but not impaired "as a consequence of psychopathology," not as a result of her physical impairments.   Thus, Dr. Mouille's conclusions lend little support for discrediting plaintiff's treating physicians' opinions regarding her physical limitations.

The ALJ also discredited the treating physicians' opinions based on plaintiff's failure to engage in an exercise program or use narcotic analgesics.   The record does not reflect, however, that plaintiff ever failed to follow any directive by her physician regarding exercise or that she ever declined to take prescribed medication.   Rather, the record reflects that plaintiff engaged in physical therapy as prescribed.   Also, her physicians were constantly changing the types and dosages of her medication in an effort to alleviate her symptoms.

The ALJ also improperly discounted these treating physicians' opinions by relying on Dr. DeMarco's testimony regarding the severity of plaintiff's pain and fatigue.[2]   Dr. DeMarco rated the severity of plaintiff's pain as "mild to moderate" based on her treatment history and disagreed with Drs. Lawhead and Ruhlman's opinions that plaintiff would have to lie down with some frequency throughout the day.   His disagreement was based on his interpretation of those physicians' treatment notes, and his testimony was essentially speculation because he testified how he would have documented plaintiff's subjective complaints of pain and fatigue differently than Drs. Lawhead and Ruhlman.   Those treating physicians, however, were of course in a better position than Dr. DeMarco to know what they meant by their treatment notes and to evaluate plaintiff's subjective complaints of pain and fatigue based on their personal experiences with her.   The ALJ also noted that Dr. DeMarco "stated that Dr. Lawhead also did not indicate during any of the twenty clinical visits from 1999 through 2002 that claimant had any specific, significant subjective complaints of memory deficits or fatigue."   This is flatly incorrect.   Dr. Lawhead's treatment notes reflect that he consistently attended to plaintiff's complaints of fatigue, as evidenced by treatment notes on five different occasions from September of 1999

---

[2] The ALJ attempted to dispel the notion that he was relying on Dr. DeMarco's opinion because the testimony of Dr. DeMarco was "only one of several factors that were considered in determining that the treating physician's [sic] opinions should be discredited."   (Tr. at 24.) It is apparent, however, that the ALJ relied heavily on Dr. DeMarco's testimony in assessing plaintiff's RFC as evidenced by the fact that the ALJ repeatedly referred to Dr. DeMarco's testimony and, as discussed previously, the ALJ essentially adopted Dr. DeMarco's assessment of plaintiff's RFC.   Thus, although the ALJ may not have expressly stated that he was relying on Dr. DeMarco's testimony, it is evident that he did so.

through January of 2001.   Dr. Ruhlman's medical record similarly reflects repeated notations regarding plaintiff's fatigue.

The ALJ also made much of plaintiff's testimony that she experienced "pain all over the body," and elicited testimony from Dr. DeMarco that "pain from head to toe, every part of the body" is not normally associated with a clinical diagnosis of fibromyalgia.   As discussed previously, however, the Tenth Circuit has stated that the principal symptom of fibromyalgia is "pain all over."   Of course, diagnosis requires that at least 11 out of 18 specific spots throughout the body be particularly tender, but "pain all over" is certainly a fair characterization by a lay person.

In sum, a reasonable mind would not accept Dr. DeMarco's opinion regarding the severity of plaintiff's symptoms as more persuasive than the opinions of Drs. Lawhead and Ruhlman.   The opinion of an agency physician who has never examined the claimant is generally entitled to the least weight of any medical opinion.   *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004).   In this case, the nature of Dr. DeMarco's testimony does not warrant a departure from this general rule because his testimony appears to be *the* anomaly in the record regarding the severity of plaintiff's pain and fatigue.[3]

-------------------

[3] Dr. DeMarco's testimony assisted the ALJ with evaluating the objective medical evidence of record.   The court is simply holding that to the extent that the ALJ relied on Dr. DeMarco's testimony to discredit the treating physicians' opinions regarding plaintiff's functional limitations arising from her subjective complaints of pain and fatigue, that reliance was improper.

In sum, then, it appears that significant aspects of the opinions of Drs. Lawhead and Ruhlman concerning plaintiff's RFC are likely entitled to controlling weight. But, the court declines to make this determination based on the present state of the record largely because the ALJ failed to apply the correct legal standards and it is not this court's duty to reweigh the evidence or to substitute its judgment for that of the Commissioner. Additionally, the ALJ's reasoning regarding plaintiff's various claimed impairments is not entirely clear because the ALJ did not set forth his reasons for discounting the various aspects of the treating physicians' opinions. Accordingly, the court remands this case to the ALJ to reassess the weight to be given to these opinions, but this time applying the correct legal standards and evaluating all of the relevant evidence in the record. *See, e.g.*, *Watkins*, 350 F.3d at 1301 (remanding for the Commissioner to apply the correct legal standards in determining the weight to be assigned to a treating physician's opinion). On remand, the ALJ shall clarify which aspects of the treating physicians' opinions are entitled to controlling weight (i.e., their opinions regarding plaintiff's ability and need to sit, stand, walk, rest, lift and carry, use her hands, etc.) and, to the extent that the ALJ determines that those opinions are not entitled to controlling weight, the ALJ shall give specific, legitimate reasons for any such findings.

### 2. *Credibility Finding*

The ALJ stated that he evaluated plaintiff's subjective complaints and allegations in accordance with *Luna v. Bowen*, 834 F.2d 161, 163-65 (10th Cir. 1987). In *Luna*, the Tenth Circuit set forth the following factors for analyzing subjective complaints of disabling conditions: (1) whether the claimant proves with objective medical evidence an impairment

that causes the subjective condition; (2) whether a loose nexus exists between the impairment and the subjective condition; and (3) whether the subjective condition is disabling based upon all objective and subjective evidence. *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994); *Luna*, 834 F.2d at 163-64. If the claimant satisfies the first two factors, the ALJ must consider plaintiff's assertions regarding subjective conditions and decide whether he or she believes them. *Luna*, 834 F.2d at 163.

In this case, the ALJ's decision does not expressly address each of these three factors. Certainly, though, the ALJ found that plaintiff suffers from degenerative joint disease of the cervical spine and fibromyalgia and those medical conditions can reasonably be expected to produce the type of pain alleged by plaintiff, and thus the ALJ presumably found that plaintiff satisfied the first two factors with respect to her subjective complaints of pain. *See, e.g.*, *Luna*, 834 F.2d at 164 ("[I]f an impairment is reasonably expected to produce *some* pain, allegations of *disabling* pain emanating from that impairment are sufficiently consistent to require consideration of all relevant evidence." (emphasis in original)). Indeed, it appears from the substance of the ALJ's reasoning that he analyzed only the last of the three *Luna* factors. Thus, the court will confine its review of this issue to the ALJ's credibility determination.

Credibility determinations are peculiarly within the province of the finder of fact, and the court should not upset credibility determinations if they are supported by substantial evidence. *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995). The ALJ should consider such factors as

the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

*Huston v. Bowen*, 838 F.2d 1125, 1132 (10th Cir. 1988).  Findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings.  *Kepler*, 68 F.3d at 391 (quoting *Huston*, 838 F.2d at 1133); *see also* SSR 96-7p, 1996 WL 374186, at *2 (credibility finding must be "supported by the evidence in the case record, and must be sufficiently specific to make clear . . . the weight the adjudicator gave to the individual's statements and the reasons for that weight").  The "ALJ must articulate specific reasons for questioning the claimant's credibility where subjective pain testimony is critical." *Kepler*, 68 F.3d at 391 (internal quotation omitted); *see also Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000) (the ALJ's evaluation must contain "specific reasons" to support the credibility finding); SSR 96-7p, 1996 WL 374186, at *2 (same).

In this case, the court is skeptical of the ALJ's reasoning regarding plaintiff's credibility.  *See, e.g.*, *Broadbent v. Harris*, 698 F.2d 407, 414 (10th Cir. 1983) (viewing the ALJ's conclusion regarding the claimant's credibility with skepticism where the claimant's complaints of pain were supported by a panel of physicians who had treated the claimant over an extended period of time).  Although the ALJ cited *Luna* and recited the factors set forth above and although the ALJ devoted a great deal of discussion to the issue of plaintiff's credibility, he did not do a particularly commendable job of giving specific, legitimate reasons

for discounting her credibility regarding the degree to which her fatigue and disabling pain impairs her ability to work.

With respect to the levels of medication and their effectiveness, the ALJ noted that plaintiff "did not allege that she experienced any adverse side effects to medication."  The lack of side effects, however, does not speak to the effectiveness of medication.  The ALJ also reasoned that there is no indication in the record that her "medications were not efficacious when taken as prescribed."  This is incorrect.  The medical record is replete with evidence that plaintiff's treating physicians were repeatedly altering the levels and types of medications in an effort to alleviate her symptoms.  The record is also replete with abundant evidence regarding the extensiveness of plaintiff's medical and nonmedical attempts to find relief for her pain and the frequency of her medical contacts.  Although the ALJ mentioned some of the evidence that bears on this issue, he failed to acknowledge the significance of the evidence on these factors.  For example, plaintiff made numerous visits to Drs. Lawhead and Ruhlman over a period of years in an effort to alleviate her chronic pain and fatigue.  She attended physical therapy when it was prescribed and she attends a fibromyalgia support group.

The ALJ made much of the nature of plaintiff's daily activities as she reported them to Dr. Mouille.  But, as discussed previously, Dr. Mouille was performing a consultative psychological examination to evaluate plaintiff's mental impairments, not her physical impairments.  Dr. Mouille stated that plaintiff reported that she is able to bathe herself, cook, manage her money, do chores, care for a child or a sick adult, shop, do lawn work, and use public transportation.  Although plaintiff may be able to perform these activities periodically,

17

the record does not indicate that she can (or does) perform them at a level and pace that would be consistent with full-time work. In fact, to the contrary, the entirety of the record regarding her activities of daily living casts doubt on the notion that those activities are indicative of an ability to perform full-time work. She reported to Dr. Mouille that she typically spends her days sitting around and caring for her own pain. She completed reports of activities of daily living which reflect that she performs fairly minimal housework and requires help with cooking, laundry, housecleaning, and shopping.

The ALJ also stated that the objective medical evidence and plaintiff's treatment history do not support her allegations. As discussed previously, however, the symptoms of fibromyalgia are subjective – pain all over, fatigue, disturbed sleep, and stiffness – and there are no objective clinical tests to determine its severity. The general rule of thumb is that a patient must have at least 11 out of 18 tender spots in order for a diagnosis of fibromyalgia, and Dr. Ruhlman found that plaintiff had all 18. The ALJ relied on Dr. DeMarco's testimony to discredit plaintiff's credibility regarding her subjective complaints of pain and fatigue and, for the reasons explained previously, the ALJ's reliance on Dr. DeMarco's testimony on that issue is such that a reasonable mind would not accept it as adequate because it is overwhelmed by the medical records and opinions of Drs. Lawhead and Ruhlman.

On remand, the ALJ shall apply the factors set forth above and point out specific evidence in the record that supports a finding that plaintiff's subjective complaints of pain and fatigue are not credible. The ALJ shall also explain the significance of plaintiff's excellent work history prior to the alleged onset of her disability (sixteen years at Hallmark) and her

attempts to seek alternative work within Hallmark that would allow her to remain employed there despite her limitations. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3) (stating that the Commissioner will consider information about a claimant's prior work record). In a case such as this, where a proper determination of plaintiff's credibility is particularly critical, the ALJ must perform a more thorough analysis of the evidence in assessing plaintiff's credibility. *See, e.g.*, *Angel v. Barnhart*, 329 F.3d 1208, 1213-14 (10th Cir. 2003) (remanding for the ALJ to conduct a more thorough analysis and make more specific findings regarding the plaintiff's credibility).

### 3.    *Combined Effect of Plaintiff's Impairments*

Plaintiff also argues that the ALJ did not properly evaluate each of plaintiff's impairments or her impairments in combination. The only impairments considered by the ALJ were mild degenerative joint disease of the cervical spine, fibromyalgia with mild to moderate discomfort, and a depressive disorder that is not severe. Plaintiff argues that this list erroneously did not include the fibromyalgia with 18 out of 18 tender points, sleep disorder, thoracic back pain, and cerviobrachial syndrome, all of which were diagnosed by Dr. Ruhlman, nor did it include the chronic fatigue syndrome diagnosed by Dr. Lawhead. The court has already determined that the ALJ failed to properly evaluate plaintiff's credibility and the weight that should be given to the opinions of Drs. Lawhead and Ruhlman. On remand, the ALJ shall also clearly address plaintiff's other various alleged impairments. *See* 20 C.F.R. § 404.1545(e) (requiring the ALJ to consider the limiting effects of all impairments, even those that are not severe, when the claimant has a severe impairment); *see also* SSR 96-8p, 1996 WL

374184, at *1 (RFC assessment must include the impact of symptoms related to medically determinable functional limitations). And the ALJ shall include any additional impairments in plaintiff's RFC and consequently the hypothetical question to the VE. *Compare Gay v. Sullivan*, 986 F.2d 1336, 1341 (10th Cir. 1993) (VE testimony can provide substantial evidence to support the ALJ's determination only if the claimant's impairments are reflected adequately in the hypothetical to the VE); *Hargis v. Sullivan*, 945 F.2d 1482, 1492 (10th Cir. 1991) (same), *with Shepherd v. Apfel*, 184 F.3d 1196, 1203 (10th Cir. 1999) (hypothetical to the VE need only include the limitations supported by the record).

### B.    Phase Two: Functional Demands of Plaintiff's Past Relevant Work

"At the second phase of the step four analysis, the ALJ must make findings regarding the physical and mental demands of the claimant's past relevant work." *Winfrey v. Chater*, 92 F.3d 1017, 1024 (10th Cir. 1996) (citing *Henrie v. United States Dep't of HHS*, 13 F.3d 359, 361 (10th Cir. 1993)). In order to make those findings, "the ALJ must obtain adequate 'factual information about those work demands which have a bearing on the medically established limitations.'" *Id.* (quoting SSR 82-62).

In this case, the ALJ essentially skipped the second phase of the step four analysis. The ALJ made a determination regarding plaintiff's RFC and relied on the vocational expert's testimony that, based on that RFC, plaintiff would be able to perform her past relevant work as an order clerk, a general office clerk, an injection mold tender, and a production coordinator. The ALJ did not make any findings regarding the physical and mental demands of those jobs, either as plaintiff actually performed those jobs or as those jobs are generally

20

performed throughout the national economy.   The vocational expert's response to the ALJ's hypothetical did not elaborate or provide any information regarding the demands of plaintiff's past relevant work.   The law in the Tenth Circuit is clear that the ALJ must make the necessary findings at this phase.   *Winfrey*, 92 F.3d at 1024 ("[T]he Secretary's own rule dictates that the ALJ make the necessary findings at phases two and three of the step four inquiry." (citing SSR 82-62)).   Accordingly, on remand, the ALJ shall make specific factual findings regarding the demands of plaintiff's past relevant work.   *See, e.g.*, *Chester v. Apfel*, No. No. 98-7106, 1999 WL 360176, at *3 (10th Cir. June 4, 1999) (reversing and remanding where the ALJ merely adopted the conclusory opinion of the VE that the plaintiff was not precluded from doing her past relevant work); *McIntire v. Apfel*, No. 97-6181, 1998 WL 31433, at *2 (10th Cir. Jan. 28, 1998) (reversing and remanding where the ALJ failed to adequately develop the record in order to enable him to make factual findings regarding the demands of the plaintiff's past relevant work).[4]

### C.     Phase Three: How Plaintiff's RFC Meshes With the Demands of Her Past Relevant Work

In light of the nature of the court's evaluation of the Commissioner's findings regarding plaintiff's RFC and the demands of her past relevant work, it necessarily follows that the ALJ's phase three determination that plaintiff could perform her past relevant work is unsupported by substantial evidence.   Accordingly, on remand, after the ALJ performs the required analysis

---

[4] The court cites these unpublished opinions for their persuasive value on a material issue.

at phases one and two, the ALJ shall then proceed to examine how plaintiff's RFC meshes with the demands of her past relevant work.

## CONCLUSION

Plaintiff requests that this case be reversed and remanded for an award of benefits because further fact finding would serve no useful purpose. Whether plaintiff is entitled to benefits, however, depends on the weight that should be given to plaintiff's treating physicians' opinions and the credibility of her testimony, both of which are subject to remand. Also, the record does not reflect the demands of plaintiff's past relevant work, and therefore it is unclear whether plaintiff can perform that work or perhaps other work that might exist in substantial numbers in the economy. Accordingly, the court declines to remand for an award of benefits.

Alternatively, plaintiff requests that the court order the Commissioner to utilize a different ALJ and a different medical expert. The court will not direct the Commissioner to utilize a different medical expert. Although Dr. DeMarco's opinion regarding plaintiff's subjective complaints of disabling pain and fatigue is entirely unpersuasive for reasons stated previously, his opinion was useful to the extent that he opined that plaintiff's functional limitations do not meet any of the listed impairments and his testimony was also useful to the ALJ in evaluating the objective medical evidence of record. Plaintiff's request for a different ALJ, however, is well founded. ALJ Lowe's opinion appears, quite candidly, to have been geared toward a finding of no disability. The facts of this case present a close enough question that the court is persuaded that plaintiff is entitled to a fresh look at the record by a seemingly

more impartial ALJ.  *See, e.g.*, *Hinton v. Massanari*, No. 00-3408, 2001 WL 744971, at *5 (10th Cir. July 3, 2001) (directing the case be assigned to a different ALJ on remand where the ALJ's decision to discount the credibility of the plaintiff's complaints of disabling pain was not justified by the evidence and the ALJ erred in rejecting plaintiff's treating physician's opinion regarding her functional capabilities).

**IT IS THEREFORE ORDERED BY THE COURT** that the Commissioner's decision is reversed and remanded for further proceedings consistent with this memorandum and order.

**IT IS FURTHER ORDERED** that this case be assigned to a different ALJ on remand.

**IT IS SO ORDERED** this 24th day of March, 2005.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge

23